IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs July 16, 2019

## STATE OF TENNESSEE v. WALTER ROY CHAVEZ, JR.

**Appeal from the Circuit Court for Lincoln County**
**No. 17-CR-136      Forest A. Durard, Jr., Judge**

_____

### No. M2018-01491-CCA-R3-CD
_____

A Lincoln County Circuit Court Jury convicted the Appellant, Walter Roy Chavez, Jr., of possession of one-half gram or more of methamphetamine with intent to resell, possession of one-half gram or more of methamphetamine with intent to deliver, simple possession of marijuana, and driving on a revoked license. After a sentencing hearing, the trial court merged the convictions of possession of methamphetamine and ordered that he serve an effective twelve years in confinement. On appeal, the Appellant contends that the evidence is insufficient to support his convictions of possession of methamphetamine and that the trial court erred by ordering an excessive sentence and by denying his request for alternative sentencing. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

William J. Harold, Lewisburg, Tennessee, for the appellant, Walter Roy Chavez, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Robert James Carter, District Attorney General; and Ann L. Filer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

Investigator Jesse Mills, an officer with the Narcotics Unit of the Lincoln County Sheriff's Department (LCSD), testified that on the night of March 18, 2017, he and Sergeant Mike Pitts were working in the southwest area of the county. As they were

traveling on Cheatham Road in Sergeant Pitts' unmarked police vehicle, they saw a white pickup truck pull out of a driveway and "[take] off" at a high rate of speed. The driver was driving erratically on Cheatham Road and was not wearing a seatbelt, so Sergeant Pitts activated his vehicle's blue lights to stop the truck.

Investigator Mills testified that the driver turned left onto Old Elkton Pike and pulled onto the left shoulder of the road instead of the right shoulder. The truck slowed, the driver's door opened four to six inches, and a clear plastic container dropped out of the bottom of the door. The door shut, and the truck continued moving forward on the left side of the roadway for another twelve to fifteen feet before it came to a stop. Sergeant Pitts stopped behind the pickup.

Investigator Mills testified that he approached the passenger side and that the Appellant was the driver and the only person in the truck. Investigator Mills asked for the Appellant's driver's license and informed him that the police had stopped him for "no seatbelt and erratic driving." The Appellant handed Investigator Mills a Tennessee identification card, and Investigator Mills recognized the Appellant and knew his license had been revoked. At that point, Sergeant Pitts approached the driver's side of the pickup and asked the Appellant to get out of the truck. Investigator Mills noticed that Sergeant Pitts was holding the clear plastic container they had seen drop from the driver's door. Sergeant Pitts arrested the Appellant, and Investigator Mills handcuffed him.

Investigator Mills testified that he had the Appellant sit on the truck's tailgate. He looked into the clear plastic container and saw "a couple of plastic baggies containing methamphetamine ice," which looked like ice crystals. Investigator Mills read Miranda warnings to the Appellant, searched him, and found $166 on his person. Investigator Mills then searched the truck and found additional plastic containers. Some of the containers contained marijuana, and some of the containers contained baggies of what appeared to be methamphetamine ice residue. Investigator Mills stated, "Through my training and experience I have seen having the baggies where you have one large quantity of a drug you break that large quantity down to smaller quantities to be able to distribute or sell." Investigator Mills described the amount of marijuana as "small." He said that some of the marijuana was "raw" and that some of it was in "roach" cigarettes. Investigator Mills also found a glass marijuana pipe with burnt marijuana residue inside the bowl of the pipe.

Investigator Mills testified that the LCSD seized the Appellant's money and truck and that the Appellant did not challenge the seizure. While Investigator Mills was explaining the seizure paperwork to the Appellant at the jail, he asked if the Appellant was employed. The Appellant said yes but that he "had to sell drugs to help make ends meet."

On cross-examination, Investigator Mills acknowledged that the drugs in the baggies could have been for the Appellant's personal use. Marijuana residue in the glass pipe suggested personal use of the marijuana.

Sergeant Mike Pitts of the LCSD's Narcotics Unit testified that about 10:00 p.m. on March 18, 2017, he and Investigator Mills were traveling on Cheatham Road. They saw a white pickup truck exit a driveway and turn left in front of them. The officers followed the truck and noticed that it was "traveling at a high[er] rate of speed than the posted speed limit." Sergeant Pitts estimated that the truck was traveling sixty-five to seventy miles per hour and said that the truck also was "traveling in the wrong lanes, taking up both lanes." Sergeant Pitts got "right up behind" the truck. He said that his headlights were shining into the pickup truck, that the driver was not wearing a seatbelt, and that he activated his blue lights for a traffic stop.

Sergeant Pitts testified that the driver turned left onto Old Elkton Pike. However, instead of pulling onto the right shoulder, the driver crossed the oncoming lane of traffic and drove the pickup onto the left shoulder. Sergeant Pitts said that the driver's door opened six to eight inches and that a clear container was "tossed out." The truck pulled forward ten to fifteen feet and came to a stop, and Sergeant Pitts stopped behind it. Investigator Mills approached the passenger side of the truck while Sergeant Pitts exited his police vehicle. Sergeant Pitts said he "took about two steps and observed a white clear container laying on the edge of the shoulder of the roadway in the grass." He put on gloves, picked up the container, shined a light onto it, and saw what appeared to be methamphetamine ice.

Sergeant Pitts testified that he walked to the driver's side of the pickup. The Appellant was the driver, and Sergeant Pitts asked him to exit the truck. The Appellant was arrested, and Sergeant Pitts had dispatch check his driver's license. The Appellant's license had been revoked. Investigator Mills searched the truck while the Appellant sat on the tailgate. During the search, Investigator Mills found marijuana, drug paraphernalia, bags, and a drug pipe. Another officer transported the Appellant to jail, and Investigator Mills "typed up" seizure paperwork for the money on the Appellant's person and the Appellant's truck. Investigator Mills read the seizure notice to the Appellant and asked if he was employed. Sergeant Pitts said that the Appellant "advised he did work at a place in Pulaski but that he was selling drugs to make ends meet."

On cross-examination, Sergeant Pitts acknowledged that he filled out a grand jury application and marked on the form that the Appellant did not give a statement. On redirect examination, Sergeant Pitts acknowledged that if the Appellant had given a written statement, he would have "marked that" on the grand jury application.

Brandy Fisher, a special agent forensic scientist with the Tennessee Bureau of Investigation (TBI), testified as an expert in forensic chemistry that she received two plastic bags containing evidence in this case. The first bag contained a crystalline substance. Agent Fisher removed a portion of the substance from the bag, weighed the substance, and performed tests on the substance to identify it. The substance weighed 3.44 grams and was methamphetamine. Agent Fisher then weighed the remainder of the crystalline substance. The remainder weighed 5.49 grams, but Agent Fisher not test it. The second bag contained a plant material and a brown substance. The plant material weighed 4.05 grams and was marijuana. The brown substance weighed 0.55 grams and was THC, an active component of marijuana.

At the conclusion of Agent Fisher's testimony, the State rested its case. The Appellant did not present any proof, and the jury convicted him as charged of possession of one-half gram or more of methamphetamine with intent to resell, a Class B felony; possession of one-half gram or more of methamphetamine with intent to deliver, a Class B felony; simple possession of marijuana, a Class A misdemeanor; and driving on a revoked license, a Class B misdemeanor. After a sentencing hearing, the trial court merged the possession of methamphetamine convictions and ordered that the Appellant serve an effective twelve years in confinement.

## II. Analysis

### A. Sufficiency of the Evidence

The Appellant contends that the evidence is insufficient to support his convictions of possession of methamphetamine with intent to resell and intent to deliver because the proof at trial showed, at most, that he "simply possessed" the methamphetamine. In support of his claim, he asserts that the drug pipe found in his truck showed that he was a drug user and that the baggies containing methamphetamine residue showed that he used the methamphetamine. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the

- 4 -

evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact.  State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury.  Id.  Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.  State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998).  "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'"  State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)).  "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'"  State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

The Appellant was charged with violating Tennessee Code Annotated section 39-17-434, which provides that it is an offense for a defendant knowingly to possess methamphetamine with intent to deliver or sell methamphetamine.  Tenn. Code Ann. § 439-17-434(a)(4).  Moreover, pursuant to Tennessee Code Annotated section 39-17-419, the trial court instructed the jury, "It may be inferred from the amount of controlled substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing them."

Taken in the light most favorable to the State, the evidence shows that when Sergeant Pitts activated his blue lights to stop the Appellant, the Appellant pulled onto the left shoulder of the road, cracked open his door, and dropped a clear plastic container onto the ground.  Inside the container were plastic baggies containing methamphetamine ice, which had a total weight of 8.93 grams.  A container inside the truck contained additional baggies with methamphetamine residue. Investigator Mills, a narcotics officer, testified without objection that through his training and experience, breaking a large quantity of a drug into smaller quantities was for the purpose of distributing and selling the drug.  The officers also found $166 on the Appellant's person, and the Appellant later told Investigator Mills that he had to sell drugs "to make ends meet."  Conversely, the Appellant possessed only a small amount of marijuana.  He also possessed a pipe for smoking the marijuana, and marijuana residue was in the pipe, which supported the

State's theory that, unlike the methamphetamine, the marijuana was for the Appellant's personal use. Therefore, we conclude that the evidence is sufficient to support the Appellant's convictions of possession of methamphetamine with intent to resell and possession of methamphetamine with intent to deliver.

## B. Sentencing

Next, the Appellant contends that his twelve-year sentence is excessive because the trial court gave too much weight to his prior criminal record and no weight to his addiction to illegal drugs. He also contends that the trial court erred by denying his request for alternative sentencing because probation or community corrections would be "a better option" than confinement for helping him with his drug issues. The State argues that the trial court properly sentenced the Appellant. We agree with the State.

The State introduced the Appellant's presentence report into evidence. According to the report, the thirty-seven-year-old Appellant was divorced with one son, was a high school graduate, and attended some college classes at the University of North Alabama. In the report, the Appellant described his physical health and mental health as "excellent" but said he needed mental health treatment for substance abuse. The Appellant said in the report that he first used methamphetamine in 1999, used one-half gram daily until March 2017, and quit using the drug because he was arrested in this case. The Appellant began consuming alcohol in 1996 and drank two to three beers one time per month. The report showed that the Appellant worked in industrial maintenance for Saargummi from March 2017 to October 2017, as a superintendent for Brindley and Associates from June 2014 to June 2018, and as an installer for Randy Davis Contracting from January 2004 to January 2009. The Appellant stated in the report that he worked for PSI Incorporated from 2009 to 2014 but that he had to leave his job at PSI and his job at Brindley Construction because he failed drug tests. The Appellant said in the report that he owed an "unknown" amount of child support. The State advised the trial court that the amount was more than $72,000.

According to the report, the Appellant had prior convictions of initiating the process to manufacture methamphetamine, possession of methamphetamine, domestic assault, simple possession of marijuana, and carrying a concealed weapon. The Appellant received probation for his convictions of initiating the process to manufacture methamphetamine and domestic assault, and his probation was revoked in both cases. Moreover, according to the 2014 judgment form for the conviction of initiating the process to manufacture methamphetamine, the Appellant was to complete a drug treatment rehabilitation program for at least twenty-eight days, and he was still on probation for that conviction when he committed the crimes in this case. In addition to the convictions in the presentence report, the State introduced into evidence certified

- 6 -

judgments of conviction showing that the Appellant had several convictions in Alabama for drug possession.

At the conclusion of the hearing, the trial court merged the convictions of possession of methamphetamine with intent to resell and intent to deliver and found the following enhancement factors applicable to his felony sentence: (1), that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"; (8), that "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community"; and (13), that at the time the felony was committed the defendant was released on probation. Tenn. Code Ann. § 40-35-114(1), (8), (13)(C). In mitigation, the trial court stated that the only factor applicable was (1), that "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1). The trial court stated, though, that "[i]f I were to consider it, I wouldn't give much, if any, weight to it." The trial court noted that the range of punishment for a Range I, standard offender convicted of a Class B felony was eight to twelve years. See Tenn. Code Ann. § 40-35-112(a)(2). The court determined that the Appellant's sentence should be enhanced from eight to twelve years "for all these past transgressions" and ordered that he serve concurrent sentences of eleven months, twenty-nine days for simple possession and six months for driving on a revoked license.

Regarding the Appellant's request for alternative sentencing, the trial court found that the Appellant's sentence of twelve years made him ineligible for probation. The trial court refused to consider community corrections, stating that the Appellant had "bite after bite after bite of the apple . . . and has failed." Accordingly, the trial court ordered that the Appellant serve his effective twelve-year sentence in confinement.

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In determining a defendant's sentence, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98.

The burden is on the Appellant to demonstrate the impropriety of his sentence.  See Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only.  See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008).  Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion."  Carter, 254 S.W.3d at 345.  In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'"  Id. at 343 (quoting Tenn. Code Ann. § 40-35-210(d)).  Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act."  Id. at 346.

First, the Appellant contends that the length of his felony sentence is excessive.  The Appellant does not contest the applicability of the three enhancement factors but claims that the trial court should have given the factors less weight and should have given more consideration to his need for drug treatment.  However, the court gave significant weight to the enhancement factors because the court was clearly troubled by the Appellant's prior criminal history and failure to abide by the terms of his prior probation sentences.  In any event, the 2005 amendments to the 1989 Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors."  Carter, 254 S.W.3d at 345.

Regarding alternative sentencing, a defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). In this case, the Appellant was convicted of a Class B felony. Therefore, he is not considered to be a favorable candidate for alternative sentencing. Id. Moreover, he received a sentence of twelve years, making him ineligible for probation. See Tenn. Code Ann. § 40-35-303(a). Thus, the trial court did not err by denying the Appellant's request for probation.

As to the Appellant's request for community corrections, we note that the Community Corrections Act of 1985 was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. Tennessee Code Annotated section 40-36-106(a)(1) provides that an offender who meets all of the following minimum criteria shall be considered eligible for community corrections:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses.

The Appellant contends that he is eligible for community corrections under subsection (a). This court has previously held that "eligibility for probation is not required for consideration of community corrections under section (a)." State v. Johnson, 342 S.W.3d

520, 523 (Tenn. Crim. App. 2009). That said, an offender is not automatically entitled to community corrections upon meeting the minimum requirements for eligibility. State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998).

When determining a defendant's suitability for alternative sentencing, courts should consider whether the following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), are applicable:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

Here, the trial court determined that the Appellant had "bite after bite after bite of the apple . . . and has failed." We agree with the trial court. The Appellant has been released on probation at least twice in the past and has failed to comply with the terms of release. He also was ordered to receive drug treatment previously, yet he continued to use and sell drugs. The court obviously found that the Appellant's rehabilitation potential was poor, and the record supports the trial court's finding. We conclude that the court did not abuse its discretion by denying a community corrections sentence.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE